(75 App. Div. 513.)

**DOWNES et al. v. DIMOCK & FINK CO.**

(Supreme Court, Appellate Division, First Department. November 7, 1902.)

1. DEEDS—CONSTRUCTION—STREET.

The owner of a tract of land filed a map on which were designated lots and streets. One lot was marked "Street," and, in a conveyance by the owner of the tract of a lot adjoining that marked "Street," part of the description was, "to land marked 'Street.'" The lot so marked had never been opened or used as a street. *Held,* that the grantee did not take to the center of the lot marked "Street," nor obtain any easement therein.

2. DEDICATION—ABANDONMENT—REVERSION OF TITLE.

Where land is conveyed to the trustees of a town for a street, on the closing and abandonment of the street the land reverts to the grantor.

Laughlin, J., dissenting in part.

Appeal from special term, New York county.

Action by Sarah J. Downes and others against the Dimock & Fink Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Gilbert D. Lamb, for appellant.
Isaac Fromme, for respondents.

McLAUGHLIN, J. On the 22d of February, 1901, the parties to this action entered into a contract by which the plaintiffs agreed to sell, and the defendant to purchase, for a specific consideration, certain real estate situate in the city of New York. At the time fixed for the ·

¶ 2. See Dedication, vol. 15, Cent. Dig. § 105.

completion of the contract by the passing of the title, the defendant refused to accept the same upon the ground that the plaintiffs did not have a marketable title to the land contracted to be sold. Subsequently this action was brought to compel the defendant to specifically perform.

The alleged defects in the title on which the defendant relied at the trial, as well as on the argument of the appeal from the judgment, are: (1) That the plaintiffs "did not have, and still do not have, a title to the north one-half of that part of the premises contracted to be sold, which were included within the street laid down on the map of the Northern district of North Melrose made by C. D. Buckout, surveyor, dated·March 31, 1851, and filed in the office of the register of Westchester county, and the title to the bed of the entire street is subject to easements in favor of Charlotte H. Stoker and the David Mayer Brewing Company and Mary Mayer, being owner and mortgagee of the premises adjoining on the north." (2) That the plaintiffs "did not have, and still do not have, title to so much of the premises contracted to be sold as lies within the lines of Railroad avenue, as described in the deed from Gouverneur Morris to the board of trustees of the town of Morrisania, dated November 8, 1864." The answer alleged certain other defects in title, but they were not relied upon at the trial, nor upon the argument of the appeal from the judgment, so it is unnecessary to consider them. The trial court found that the plaintiffs had not only a record title, but also had acquired title by adverse possession, and directed the defendant to specifically perform, and it has appealed.

The facts established at the trial, and found by the court, so far as the same are material to the questions presented upon this appeal, are substantially as follows: Prior to 1851 Gouverneur Morris was the owner of a tract of land embraced in what was then known as "Morrisania," and on the 2d of October of that year he filed in the county of Westchester a map upon which were designated certain lots, the dimensions of which were given by metes and bounds, and also certain streets, among which was one termed "Railroad Avenue." This avenue was bounded on the westerly side, at or near where the premises in question were situated, by a stream called "Mill Brook," and which stream was situated between the avenue and the premises contracted to be sold. One of the lots designated upon that map was No. 5, which had a frontage of 60 feet upon Mill brook, and immediately north of lot No. 5 was a lot having a frontage of 40 feet upon the brook, and this was designated as "Street." While the lot upon the map was designated "Street," there was nothing upon the map, nor was any proof offered upon the trial, which indicated or tended to show that this land was ever opened, used as a street, or that it was ever intended by Morris to be a street.

The first objection of the defendant relates to the north half of this lot,—it contending that the owners of the lot immediately adjoining it on the north acquired title to the center of it; in other words, that, the word "Street" being used, he went to the center of the lot, instead of the northern boundary of it. There is no force in the objection, because the word "Street" seems simply to have been adopted to dis-

tinguish this lot from the others, and not for the purpose of indicating that it was, or was intended to be, a street for the use of the public, or persons purchasing lots indicated upon the map. All that appeared with reference to it was that on October 17, 1851, Gouverneur Morris conveyed to McLaren four of the lots designated upon the map, next to and adjoining the street lot on the south, the northerly one of which was No. 5. He described the lots, so far as the description is material to the question now under consideration, as follows:

"Thence northerly along the same curve 60 feet 6 inches to land marked 'Street' on said map; thence south, 81 degrees 15 minutes east, 91 feet, to Mill brook; thence south and southeast along said brook as the same winds and turns," etc.

Next to and immediately adjoining the street lot on the north was what was designated on the map as "Lot No. 4," and this lot, with others, Morris on the 18th of March, 1852, conveyed to one Miller, by deed containing the following description:

"Conveys lots 3 & 4 on map of Northern division of North Melrose, filed October 2, 1851; bounded on the west by the Branch Railroad, 200 $11/_{12}$ feet; on the north by lot 2 on said map, 95 $5/_{12}$ feet; on the east by Mill brook, 200 feet; and on the south by piece of land marked 'Street' on said map, 97 feet, be the same more or less."

This description, as well as the description of the lots sold to McLaren, indicates that it was not the intention of Morris to convey to either of his grantees, McLaren or Miller, any portion of the street lot, or any right to or easement therein. It will be observed that the deeds do not recite that the respective lots are bounded by a street, but, on the contrary, by a piece of "land marked 'Street.'" That land was not then opened as a street. It is not so designated upon any of the maps offered in evidence upon the trial, and there is no recital in the deeds, or either of them, that it was to become a street, or used as such. The grantees, therefore, of the adjacent premises, were limited by the boundaries mentioned in their respective deeds, which was in one case the northern boundary of the street lot, and in the other case the southern boundary of the same. Indeed, the description in both of the deeds disproves the contention that Morris intended to convey any right or interest in the street lot. The lots are conveyed by metes and bounds stated in the deeds, and which do not include any part of the street lot. The title, therefore, to the street lot, after the conveyances to Miller and McLaren, remained in Morris; and he, by deeds to one Chauncey Smith and wife, quitclaimed all his right, title, and interest therein, and this title has since been acquired and is now held by the plaintiffs. This title is good. There is not a suggestion of any defect in it, other than the one already indicated, viz., that the lot was designated on the map, "Street," by Morris, and this, under the proof presented, falls far short of creating any defect in it.

This brings us to a consideration of the second objection, which relates to a triangular piece of land next to and immediately adjoining lot No. 5 on the east. This triangular piece was formerly included in and formed a part of Railroad avenue, as designated on the map filed by Morris in 1851. No portion of Railroad avenue was

conveyed to plaintiffs' predecessor in title, McLaren, by the deed of 1851. The premises described in that deed excluded Railroad avenue. In other words, they were bounded on the east by Mill brook, which was then located between the land conveyed and Railroad avenue. In 1864 the board of trustees of the town of Morrisania was incorporated (chapter 277, Laws 1864), and on November 8th of that year Morris quitclaimed to such board "all the streets, avenues, and places designated upon a certain map entitled 'Village of Morrisania,' * * * to wit, Railroad avenue (this avenue, where it runs along Mill brook, is of irregular width, and is intended to embrace all the land lying between the easterly side of said avenue and the Mill brook, be the same more or less)," and certain other streets specifically named. The title to the land conveyed, however, was made subject to the following condition, viz.: "In trust, nevertheless, for the benefit of the inhabitants of the village of Morrisania, to be held and maintained as public streets and avenues, and for no other purpose whatsoever." In 1868 an act was passed (chapter 841, Laws 1868) which provided that certain commissioners specified in the act were clothed with power to lay out, open, and close streets in the county of Westchester, including the Morrisania district; and in February, 1871, such commissioners filed in the office of the clerk of that county a map which showed that they had closed and abandoned as a public street Railroad avenue where the same passed in front of and adjoined the premises now under consideration. The title to the land thereupon reverted to Morris. It was conveyed for one purpose, viz., a public street; and when it had ceased to be used as a street, and its use had been abandoned by the public, the title thereto reverted to Morris, and he could by a conveyance give as good title as though the deed to the trustees of Morrisania had never been given. He thereafter, by the quitclaim deeds referred to, to Smith and wife, conveyed all his right, title, and interest in Railroad avenue in front of lot No. 5 to them; and the plaintiffs, by mesne conveyances, have acquired that title. It is a good record title,—one which is marketable, and one which a reasonable man would not hesitate to take.

It is also claimed that the plaintiffs have acquired title to the triangular strip by adverse possession, and to the street lot by the Stoker deed. We deem it unnecessary to consider these questions, preferring to rest our decision upon the ground that the plaintiffs have a good record title to both pieces, irrespective of such claims, and that the defendant's objection thereto was not well founded.

The judgment appealed from is right, and should be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON and O'BRIEN, JJ., concur.

LAUGHLIN, J. I dissent on the ground that the grantees of the abutting parcels obtained an easement in the strip designated "Street" for light, air, and access.